UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABDULMOKNE GHALEB,

        Plaintiff,                  Civil Case No. 13-13822
                                                Honorable Linda V. Parker

v.

AMERICAN STEAMSHIP CO.,

        Defendant.
_____/

**OPINION AND ORDER (1) DENYING AS MOOT DEFENDANT'S MOTION FOR JUDGMENT AND MOTION FOR ENTRY OF JUDGMENT [ECF NOS. 65 & 80]; (2) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DIRECTED VERDICT AND MOTION FOR NEW TRIAL AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW ON THE ISSUE OF LIABILITY [ECF NOS. 69 & 79]; AND (3) DENYING PLAINTIFF'S MOTION FOR COSTS [ECF NO. 81]**

This is an admiralty action arising from an injury Plaintiff Abdulmokne Ghaleb ("Plaintiff") sustained on December 29, 2012, while working on Defendant American Steamship Company's marine vessel known as the "ATB KEN BOOTHE, SR." (hereafter "vessel"). On June 26, 2015, a jury returned a verdict in favor of Defendant and against Plaintiff on Plaintiff's claims of negligence (including negligence per se) and unseaworthiness of a vessel under the Jones Act, 46 U.S.C. §§ 30101-30106. (*See* ECF No. 71.) After the verdict was received, the Court learned that an exhibit the Court ruled to be inadmissible during trial-- and which therefore was excluded from evidence-- had been included in the exhibit

book provided to the jurors during their deliberations. The Court informed counsel for the parties of this discovery and granted them an opportunity to file whatever post-trial motions they deemed necessary as a result of this error.

In the meantime, during the trial, Defendant had moved for judgment as a matter of law and Plaintiff had moved for a directed verdict. (ECF Nos. 65, 69.) The Court had taken the motions under advisement. Those motions, along with the following post-verdict motions, are now pending before the Court:

- Plaintiff's Motion for New Trial and Renewed Motion for Judgment as a Matter of Law (ECF No. 79);

- Defendant's Motion for Judgment Entry (ECF No. 80); and

- Plaintiff's Motion for Costs (ECF No. 81).

The motions have been fully briefed. Because the Court entered a Judgment on July 10, 2015, in accordance with the jury's verdict, Defendant's motion for judgment and motion asking the Court to enter a judgment are moot. For the reasons that follow, the Court denies the remaining motions.

## Plaintiff's Motion for New Trial

Plaintiff seeks a new trial based on the inclusion of an inadmissible and excluded document in the exhibit book provided to the jurors during their deliberations. The document is titled: "American Steamship Company Report of Illness or Injury" (hereafter the "accident report"), which the vessel's captain, Captain David Laban, completed following Plaintiff's injury. Plaintiff places

blame on Defendant's counsel for the inclusion of the accident report in the juror's exhibit book, as defense counsel put together the joint exhibit book and purportedly assured Plaintiff's counsel that the book had been purged of all exhibits not admitted at trial. Regardless of who is at fault for the accident report's inclusion (a determination the Court finds it need not make), the Court cannot conclude that Plaintiff is entitled to a new trial as a result.

The parties disagree as to the proper standard to apply in deciding Plaintiff's motion for new trial based on the admission of the accident report. Plaintiff urges the Court to follow the "presumption of prejudice" standard set forth in *In re Beverly Hills Fire Litigation*, 695 F.2d 207 (6th Cir. 1982). Defendant argues that Plaintiff must demonstrate prejudice as a result of the claimed error. Even if prejudice is presumed, however, Defendant may rebut the presumption. As the Sixth Circuit stated in *Beverly Hills Fire Litigation*:

> The jury's receipt of such extraneous information "requires that the verdict be set aside, *unless* entirely devoid of any proven influence or the probability of such influence upon the jury's deliberations or verdict."

695 F.2d at 215 (quoting *Stiles v. Lawrie*, 211 F.3d 188, 190 (6th Cir. 1954)). The Court concludes that Defendant has made this showing.

As Defendant points out in response to Plaintiff's motion, the contents of the accident report are consistent with the testimony introduced at trial.[1] Most significantly, the accident report provides that Plaintiff suffered pain in his lower back due to falling when members of the crew (Chief Peter Warren, GVA Mohsen AlQasemi, GVA Abdulghafor Ahmed, and QMED Rick Pettaway), while moving the shore power cable to the dock, lowered the cable and it tripped Plaintiff from behind.[2] (*See* ECF No. 90-1.) While it is possible that the jury misread the

---

[1] In his motion for new trial, Plaintiff argues that he was prejudiced by the juror's receipt of the accident report because the Court rejected Defendant's argument that it was admissible as a party admission and "Plaintiff tried his entire case with the knowledge that the accident report was inadmissible and would not be going to the jury." (*See* ECF No. 95 at Pg ID 2165.) The law does not support Plaintiff's contention that the jury's receipt of an excluded piece of evidence on its own establishes prejudice and Plaintiff fails to explain how he would have tried his case differently if he knew the jury was going to receive the accident report.

[2] Plaintiff argues that, in contrast to the accident report, the testimony at trial was not that he "tripped." (ECF No. 79 at Pg ID 1371.) What the accident report says, however, is that the "[power] cable lowered [and] tripped [Plaintiff]." (ECF No. 90-1.) This is consistent with the trial testimony. (*See, e.g.*, Trial Tr. Vol. 3 at Pg ID 714-18, ECF No. 66 (Plaintiff's testimony that the power cable hit the back of his shoes and took his legs up; Trial Tr. Vol. 7 at Pg ID 1227-28, ECF No. 76 (Captain Laban's testimony that Plaintiff was "tripped from behind and fell over").) Plaintiff argues that the accident report is inconsistent with the evidence adduced at trial because it states that Plaintiff injured his shin. (ECF No. 79 at Pg ID 1371.) The Court does not see how this discrepancy could have influenced the jury's verdict.

accident report, any further inquiry into the influence of the document on the jury's deliberations is precluded by Rule 606(b) of the Federal Rules of Evidence.[3]

Rule 606(b) provides:

**(b) During an Inquiry Into the Validity of a Verdict or Indictment.**

(1) **Prohibited Testimony or Other Evidence.** During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

(2) **Exceptions.** A juror may testify about whether:

(A) extraneous prejudicial information was improperly brought to the jury's attention;

(B) an outside influence was improperly brought to bear on any juror; or

(C) a mistake was made in entering the verdict on the verdict form.

---

[3] Plaintiff argues that, before discovering the accident report, the jury must have found Defendant liable because the report was attached to Plaintiff's medical records and the jury must have been reviewing those records to assess his injuries (and therefore his damages). (ECF No. 79 at Pg ID 1372.) The Court has no way to conclude that this was the jury's deliberative process. It may be as likely that having heard mention of the accident report during the trial testimony (*see, e.g.*, Trial Tr. Vol. 7 at Pg ID 1228, ECF No. 76), the jury presumed it was an admitted exhibit and had gone searching through the exhibit binder to find it.

Fed. R. Evid. 606. Reviewing the legislative history of the rule, the Fifth Circuit concluded in *Peterson v. Wilson*, 141 F.3d 573 (1998) " 'that Congress made a conscious decision to disallow juror testimony as to the jurors' mental processes or fidelity to the court's instructions.' " *Id*. at 578 (quoting *Robles v. Exxon Corp.*, 862 F.2d 1201, 1205 (5th Cir.), *cert. denied*, 490 U.S. 1051 (1989)) (emphasis added in *Peterson* removed). As such, while Rule 606(b) allows the Court to consider evidence as to whether the accident report was improperly brought to the jury's attention, the rule does not permit the Court to inquire further into the effect of the report on the jury's deliberations. As one district judge has summarized:

> Thus, while jurors are generally incompetent to testify as to any matter or statement occurring during their deliberations or the effect of anything on their mental processes, the rule provides an exception which permits jurors to testify as to external influences upon them. *See Tanner v. United States*, [483 U.S. 107, 117-125], 107 S. Ct. 2739, 2745–51, 97 L.Ed.2d 90 (1987); *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 213 (6th Cir. 1982); *Womble v. J.C. Penney*, 431 F.2d 985, 989 (6th Cir. 1970). This exception permitting inquiry into external influences upon the jury, however, is limited to identification of those extraneous sources of information-- once the existence of external influences upon the jury has been established, neither the Court nor counsel may inquire into the subjective effect of these external influences upon particular jurors. Rather, the Court must determine whether such extraneous information was prejudicial by determining how it would effect an objective "typical juror." *See Owen v. Duckworth*, 727 F.2d 643, 646 (7th Cir. 1984); *United States v. Bassler*, 651 F.2d 600, 603 (8th Cir.); *cert. denied*, 454 U.S. 944, 102 S. Ct. 485, 70 L.Ed.2d 254 (1981) and 454 U.S. 1151, 102 S. Ct. 1018, 71 L.Ed.2d 305 (1982); *Miller v. United States*, 403 F.2d 77, 83 n. 11 (2d Cir. 1968); 3 Weinstein & Berger, Weinstein's Evidence ¶ 606[5] (1985 & May, 1987 cum. supp.).

*Urseth v. City of Dayton*, 680 F. Supp. 1084, 1089 (S.D. Ohio 1987).

Precluded from asking how the jury viewed or considered the accident report and considering only how "an objective 'typical juror' " would be effected by it, the Court must conclude that the jury's receipt of the excluded exhibit is not grounds for a new trial. The Court therefore is denying Plaintiff's motion for new trial.

**Plaintiff's Motion and Renewed Motion for Judgment as a Matter of Law**

" 'Judgment as a matter of law is appropriate when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party.' " *Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 723 (6th Cir. 2006) (quoting *Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 527 (6th Cir. 2005)) (additional quotation marks omitted). The court considers the entire trial record, but "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) (citation omitted). "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Id*. (internal quotation marks and citation omitted). The court does not determine the credibility

of the witnesses or weigh the evidence. *Littlejohn v. Rose*, 768 F.2d 765, 770 (6th Cir. 1985).

## Plaintiff's Negligence Per Se Claim

As the Court's instructions to the jury provided, Plaintiff claims that Defendant violated 46 U.S.C. § 8104(c) which establishes maximum work hours seamen may work on a towing vessel such as the ATB KEN BOOTH, SR while operating in certain locations.[4] (ECF No. 73 at Pg ID 1196.) To find in Plaintiff's favor on his negligence per se claim, the jury had to find by a preponderance of the evidence that Defendant violated this statute "and that this violation caused Plaintiff's injuries . . . ." (*Id*.) The instructions stipulated to by the parties instructed that causation is demonstrated if "the violation played any part, no matter how small, in bringing about or actually causing injury to Plaintiff[.]" (*Id*.)

---

[4] The statute reads:

> On a towing vessel (except a towing vessel operated only for fishing, fish processing, fish tender, or engaged in salvage operations) operating on the Great Lakes, harbors of the Great Lakes, and connecting or tributary waters between Gary, Indiana, Duluth, Minnesota, Niagara Falls, New York, and Ogdensburg, New York, a licensed individual or seaman in the deck or engine department may not be required to work more than 8 hours in one day or permitted to work more than 15 hours in any 24-hour period, or more than 36 hours in any 72-hour period, except in an emergency when life or property are endangered.

46 U.S.C. § 8104(c).

This instruction perhaps did not sufficiently stress to the jury how relaxed the causation element is for Jones Act claims.

As several courts have described, in a Jones Act case, "[t]he seamen's burden to prove causation is quite light and has been described as 'featherweight.' " *McKinney v. Am. River Transport Co.*, 954 F. Supp. 2d 799, 805 (S.D. Ill. 2013) (quoting *Cella v. United States*, 998 F.2d 418, 427 (7th Cir. 1993)); *see also Ferrara v. A & V Fishing, Inc.*, 99 F.3d 449, 453 (5th Cir. 1996) (citing *Toucet v. Maritime Overseas Corp.*, 991 F.2d 5, 10 (1st Cir. 1993)); *CSX Transp., Inc. v. McBride*, -- U.S. --, 131 S. Ct. 2630 (2011) (setting forth the causation standard applicable in Federal Employers' Liability Act (FELA) cases and explaining that it is "a relaxed standard" which requires proof " 'that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.' ") (quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 506 (1957)).[5] This means that liability " 'exists if the employer's negligence contributed even in the slightest to the plaintiff's injury.' " *Ferrara*, 99 F.3d at 453 (quoting *Toucet*, 991 F.2d at 10). This standard of proof is important

---

[5] The Supreme Court has advised that because Congress intended to apply FELA's rules in Jones Act cases, it follows that judicial interpretation of FELA also apply to the Jones Act. *Am. Dredging Co. v. Miller*, 510 U.S. 443, 455-56 (1993) ("[T]he Jones Act adopts 'the entire judicially developed doctrine of liability under [FELA].' ").

to bear in mind when considering a motion for judgment as a matter of law. As the Fifth Circuit has explained:

> In keeping with this less demanding standard of proof of causation, the test for sufficiency of evidence in a Jones Act case also requires less evidence to support a finding and directed verdicts and j.n.o.v. motions are granted "only when there is a complete absence of probative facts" to support a verdict.

*Comeaux v. T.L. James & Co., Inc.*, 702 F.2d 1023, 1024 (5th Cir. 1983) (citations omitted).

This lighter evidentiary burden for Jones Act cases flows from the statute's "broad remedial nature." *Bavaro v. Grand Victoria Casino*, No. 97-C-7921, 2001 WL 289782, at *1 (N.D. Ill. 2001) (quoting *Williams v. Long Island R.R. Co.*, 196 F.3d 402, 406 (2d Cir. 1999)). As the Supreme Court has found, Congress enacted the Jones Act "thereby completing the trilogy of heightened legal protections (unavailable to other maritime workers) that seamen receive because of their exposure to the perils of the sea." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354 (1995) (internal quotation marks and citation omitted). The Court similarly stated: "Traditional seamen's remedies . . . have been universally recognized as ... growing out of the status of the seaman and his peculiar relationship to the vessel, and as a feature of the maritime law compensating or offsetting the special hazards and disadvantages to which they who go down to sea in ships are subjected."

*McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 354 (1991) (internal quotation marks and citation omitted). Courts liberally construe the Jones Act to further Congress' remedial goal. *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994).

In the present case, a reasonable jury could only conclude that Defendant violated § 8104(c). The evidence undisputedly showed that Plaintiff, Chief Warren, GVA AlQasemi, and GVA Ahmed worked more than the hours permitted by the statute in the days leading up to Plaintiff's accident. (*See, e.g.*, Trial Tr. Vol. 7 at Pg ID 1306-23, ECF No. 76; Trial Tr. Vol. 9 at Pg ID 1695-97, 1812-25, ECF No. 89.) Courts "have concluded that the purpose of this statute is to promote safety at sea for the benefit of the ship's crew." *Janes v. Grand River Navigation Co.*, No. 07-cv-14436, 2009 WL 3153074, at *5 (E.D. Mich. Sept. 30, 2009) (citing *Roy Crook & Sons, Inc v. Allen*, 778 F.2d 1037, 1041-42 (5th Cir. 1986)); *see also Elms v. Crowley Marine Service, Inc.*, No. C95-363Z, 1996 WL 881928, at *6 (W.D. Wash. Sept. 16, 1996). As the Supreme Court explained with respect to the predecessor work hours statute: "[T]he provision, fundamentally, is a measure of precaution against those perilous and often unexpected emergencies of the sea when only immediate and wakeful readiness for action may avert disaster or determine the issue between life and death[.]" *O'Hara v. Luckenbach S.S. Co.*, 269 U.S. 364, 368 (1926). Reasonable minds could come to but one conclusion

with respect to whether Defendant's violation of § 8104(c) played at least a slight part in causing Plaintiff's injuries.

GVA AlQasemi and Plaintiff both testified that, as a result of working excessive hours in the days leading up to the accident, they were tired.[6] (*See* AlQasemi Dep. Tr. at 105; Trial Tr. Vol. 3 at Pg ID 666, ECF No. 66.) There is no explanation except for a lack of "immediate and wakeful readiness" for why Plaintiff– with more than ten years' experience as a seamen, who Chief Warren described as "skilled at what we were going to be doing" (Trial Tr. Vol. 8 at Pg ID 1723, ECF No. 89)– did not extricate himself from the area where he was throwing the heaving line to shore when he recognized he would be hit by the power cable and possibly killed if the other men began moving the cable. Plaintiff in fact did not remove himself from this zone of danger even after he saw GVA Ahmed and

---

[6] Defendant developed testimony at trial to show that none of the individuals involved in the accident asked to be relieved from his duties due to fatigue and that exceeding the work hours limits meant higher wages for the crew. However, because the purpose of the statute is to provide a safe work environment onboard the vessel, the Court does not believe that a ship owner should be relieved of liability due to a seaman's failure to complain about fatigue or willingness to violate the statute. An individual willing to violate the statute puts himself as well as other crewmembers at risk. The plain language of the statute precludes the vessel owner from "require[ing]" licensed individuals or seamen in the deck or engine department from exceeding the work hour restrictions, except in certain emergency situations. 46 U.S.C. § 8104(c). In fact, as the Court's instructions to the jury provided, Plaintiff's negligence is not a defense and does not reduce the recovery by Plaintiff for any damages caused by any violation of § 8104(c). (*See* ECF No. 73 at Pg ID 1197.)

GVA AlQasemi starting to move the power cable over the side of the vessel. Thus, when GVA Ahmed subsequently slipped on ice covering the deck which caused him and then the other individuals to drop the power cable, the cable traveled in Plaintiff's direction and tripped him from behind. (*Id*. at 69; AlQasemi Dep. Tr. at 56-57, 67.) Furthermore, although GVA AlQasemi realized that the area where the seamen were standing was icy, he testified that he failed to say anything to anybody about the deck's condition because he had worked too many hours and was tired. (AlQasemi Dep. Tr. at 75-76.)

For these reasons, the Court finds that a reasonable jury would have to conclude that Defendant's violation of the work hours statute, § 8104(c), played at least some part– even if only a slight part– in Plaintiff's injury. As such, the Court holds that Plaintiff is entitled to judgment as a matter of law with respect to his negligence per se claim. The Court nevertheless will address Plaintiff's remaining claims for which he argues he is entitled to judgment as a matter of law.

## Negligence

Plaintiff contends that he is entitled to judgment as a matter of law with respect to his negligence claim based on the manner in which Chief Warren supervised and managed the power cable deployment. Plaintiff maintains that Chief Warren was negligent in that he placed Plaintiff in a zone of danger-- where

13

he could have been (and was) struck by the power cable. (*See* ECF No. 79 at Pg ID 1357.)

As the Court instructed the jury, to find Defendant liable to Plaintiff for negligence under the Jones Act, it had to find by a preponderance of the evidence:

> (1) that Plaintiff was a member of the crew of a vessel, acting in the course of his employment; (2) that Defendant was Plaintiff's employer; (3) that Defendant or one of its officers, employees or agents was negligent; and, (4) that such negligence played a part, no matter how slight, in bringing about an injury to Plaintiff.

(ECF No. 73 at Pg ID 1182.) Negligence under the Jones Act "is determined under the 'ordinary prudence' standard normally applicable in negligence cases." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 598 (6th Cir.), *cert. denied*, 534 U.S. 994 (2001). The plaintiff must show " 'the breach of a duty to protect against foreseeable risks of harm.' " *Id.* (quoting *Hernandez v. Trawler Miss Vertie Mae, Inc.*, 187 F.3d 432, 437 (4th Cir. 1999)). "It is a fundamental principle that, under the Jones Act, an employer 'must have notice and the opportunity to correct an unsafe condition before liability will attach.' " *Id.* (quoting *Havens v. F/T Polar Mist*, 996 F.2d 215, 218 (9th Cir. 1993)). Viewing the evidence in the light most favorable to Defendant, a reasonable jury could have concluded that Chief Warren did not breach a duty to protect Plaintiff from a foreseeable risk of harm.

There was testimony that Chief Warren supervised the power cable maneuver and instructed the seamen where to stand with respect to the cable. (Trial Tr. Vol. 8 & 9 at Pg ID 1723, 1730, 1737, ECF No. 89.) There also was testimony that Chief Warren told Plaintiff to retrieve a heaving line when it was discovered that one had not yet been tied on to the power cable, and that when a heaving line was secured, he told Plaintiff to tie it up to the cable. (Trial Tr. Vol 3 at Pg ID 704-05, ECF No. 66.) However, it is not evident from the trial testimony that Chief Warren instructed Plaintiff on where to stand when Plaintiff went to throw the heaving line to the dock. (*Id.* at Pg ID 915; *see also* Hall Dep. Tr. at 85.) Plaintiff testified that Chief Warren told him to "throw the line, that's it." (Trial Tr. Vol. 3 & 4 at Pg ID 915, ECF No. 66.) When asked whether Chief Warren told him what to do as far as putting the [heaving line] through the wire and putting it down, Plaintiff responded: "I know what I do." (*Id.*)

Moreover, according to Plaintiff and Chief Warren, the power cable was laying on the deck while Plaintiff was tying on the heaving line and preparing to throw it to the dock. (*Id.* at Pg ID 726; Trial Tr. Vol. 9 at Pg ID 1740, ECF No. 89.) At some point, GVA AlQasemi, GVA Ahmed, Chief Warren, and QMED Pettaway picked the power cable back up; however, there is no evidence that Chief Warren instructed anyone to do so. According to Chief Warren, while Plaintiff was preparing to throw the heaving line to the dock, QMED Pettaway asked Chief

15

Warren a question, causing Chief Warren to turn away from the direction of Plaintiff, GVA AlQasemi, and GVA Ahmed to answer him. (Trial Tr. Vol. 9 at Pg ID 1743.) Chief Warren then heard laughing, which caused him to turn back as GVA AlQasemi and GVA Ahmed dropped the power cable and the cable moved toward Plaintiff. (*Id*.) As GVA AlQasemi described, this happened "one, two, three." (AlQasemi Dep. Tr. at 67.)

Undoubtedly there was testimony that Chief Warren should have realized that Plaintiff was in a danger zone and either told Plaintiff to move or had the men put the power cable back down. (Hall Dep. Tr. at 177.) A reasonable jury could have disagreed, however, and found that no one was at fault for Plaintiff's injury. *See Beech v. Hercules Drilling Co.*, 691 F.3d 566, 571 (5th Cir. 2012) (quoting *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 543 (1994)) (explaining that neither the Jones Act nor the Federal Employer's Liability Act are workers' compensation statutes and that "[n]either makes 'the employer the insurer of the safety of his employees while they are on duty. The basis of [the employer's] liability is his negligence, not the fact that injuries occur.' ") As such, the Court concludes that Plaintiff is not entitled to judgment as a matter of law with respect to his negligence claim.

**Unseaworthiness**

Plaintiff argues that he is entitled to judgment as a matter of law with respect to his unseaworthiness claim because Defendant failed to provide a seaworthy vessel when it supplied an inadequately trained and fatigued crew which led to Plaintiff being placed in a zone of danger where he could be-- and was-- struck by the power cable.  To prove his unseaworthy claim, Plaintiff had to prove by a preponderance of the evidence that: (1) the ship or its equipment or crew was unseaworthy; and (2) such unseaworthiness was a proximate cause of his injury. (ECF No. 73 at Pg ID 1189.)  As the Court instructed the jury, Defendant had a legal duty to provide an adequate and competent crew.  (*Id*. at Pg ID 1190.)

The Court finds that a reasonable jury could have concluded that even if Defendant provided a fatigued crew, this was note the *proximate* cause of Plaintiff's injury.  Unlike Plaintiff's negligence per se claim, his unseaworthiness claim required proof that the vessel's unseaworthiness "played a substantial part or was a substantial factor in bringing about or actually causing his injury." (*Id*. at 1192.)  With respect to the crew's training, there was evidence that the crew was sufficiently trained.  (Trial Tr. Vol. 7 at Pg ID 1328-30, ECF No. 76.)  There in fact was no testimony that the crew members involved in the power cable maneuver were incompetent or inadequately trained and there was sufficient evidence from which a reasonable jury could find that they were properly

supervised.  Thus there was not only one conclusion that the jury could have reached on this issue.  The Court therefore concludes that Plaintiff is not entitled to judgment as a matter of law with respect to his unseaworthiness claim.

## Conclusion

For the reasons set forth above, the Court cannot conclude that Plaintiff suffered prejudice as a result of the jury's receipt of the accident report.  Therefore, Plaintiff is not entitled to a new trial as a result of its submission to the jury.  Having reached this conclusion, the Court holds that Plaintiff is not entitled to costs due to the inclusion of the accident report in the exhibit binder provided to the jury, even if defense counsel is at fault for this error.

The Court also holds that, viewing the evidence in the light most favorable to Defendant, there was not one conclusion that the jury could have reached with respect to Plaintiff's general negligence and unseaworthiness claims.  A reasonable jury could have concluded-- as this jury did-- that Plaintiff failed to establish Defendant's liability for negligence and unseaworthiness under the Jones Act.  On the other hand, reasonable minds could come to but one conclusion with respect to Plaintiff's negligence per se claim, and that is that Defendant's violation of § 8104(c) played some part, if only a slight part, in causing his injuries.  The Court therefore enters judgment as a matter of law in favor of Plaintiff with respect to that claim.

Accordingly,

**IT IS ORDERED**, that Defendant's Motion for Judgment [ECF No. 65] and Motion for Judgment Entry [ECF No. 80] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED**, that Plaintiff's Motion for Costs [ECF No. 81] is **DENIED**;

**IT IS FURTHER ORDERED**, that Plaintiff's Motion for Directed Verdict [ECF No. 69], Motion for New Trial and Renewed Motion for Judgment as a Matter of Law [ECF No. 79] are **GRANTED IN PART AND DENIED IN PART** in that the previous Judgment [ECF NO. 86] is **VACATED** and Judgment is entered in favor of Plaintiff with respect to his negligence per se claim. Counsel for the parties shall appear for a status conference before this Court on February 3, 2016 at 11:00 a.m. at the U.S. District Court, 600 Church Street, Flint, MI, 48502.

                                           s/ Linda V. Parker
                                           LINDA V. PARKER
                                           U.S. DISTRICT JUDGE

Dated: December 23, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, December 23, 2015, by electronic and/or U.S. First Class mail.

                                           s/ Richard Loury
                                           Case Manager